ALI ABUGHEIDA (STATE BAR NO. 285284)
aabugheida@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

BETTY KIM (STATE BAR NO. 341060)
betty.kim@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue
Suite 2700
Los Angeles, CA 90071-1596
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

Attorneys for Defendant
Kelley Blue Book Co., Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAYATRI DE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KELLEY BLUE BOOK CO., INC., a California Corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 3:26-cv-8363-SK<br><br>**DEFENDANT KELLEY BLUE BOOK CO., INC.'S MOTION TO COMPEL ARBITRATION**<br><br>Hearing: December 7, 2026<br>Time: 9:30 am<br><br>Dept: Courtroom C—15th Floor<br>Judge: Hon. Sallie Kim<br>Trial Date: N/A<br>Date Action Filed: July 6, 2026 |

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 1
III. LEGAL STANDARD ..... 3
IV. ARGUMENT ..... 4
  A. The FAA Governs KBB's Arbitration Agreement ..... 4
  B. Plaintiff Agreed to KBB's Terms of Service, Including the Arbitration Provision ..... 5
    1. The banner provided reasonably conspicuous notice of the Terms ..... 5
    2. The banner expressly advised that clicking any button, including "Opt Out of Non-Essential Cookies," would manifest assent to the Terms ..... 6
    3. Plaintiff accepted the Terms by clicking the "Opt Out of Non-Essential Cookies" button ..... 7
  C. The Parties Delegated Arbitrability Issues to the Arbitrator and Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement ..... 7
  D. If The Court Does Not Grant KBB's Motion, It Should Allow KBB to Take Discovery into Plaintiff's Use of the KBB Website ..... 8
  E. The Court Should Stay This Case Pending Arbitration ..... 8
V. CONCLUSION ..... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) .......... 4

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 4

*Berman v. Freedom Fin. Network*,
30 F.4th 849 (9th Cir. 2022) .......... 5, 7

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 7

*Caremark, LLC v. Choctaw Nation*,
104 F.4th 81 (9th Cir. 2024) .......... 7

*Concat LP v. Unilever, PLC*,
350 F. Supp. 2d 796 (N.D. Cal. 2004) .......... 8

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .......... 4

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .......... 5

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) .......... 4

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
586 U.S. 63 (2019) .......... 4

*I.C. by & Through Chaudhri v. Zynga Inc.*,
2021 WL 51718 (N.D. Cal. Jan. 6, 2021) .......... 4

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022) .......... 8

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... 6

*Malone v. Super. Ct.*,
226 Cal. App. 4th 1551 (2014) .......... 4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 4

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 5, 6

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ........ 5, 6

*Penning v. NVIDIA*,
2026 WL 1433313 (N.D. Cal. May 21, 2026) ........ 5, 6, 7

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ........ 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 2650689 (N.D. Cal. Jul. 6, 2011) ........ 3, 4

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ........ 5

**Statutes**

9 U.S.C. § 1 *et seq.* ........ 1, 3, 4, 8

18 U.S.C. § 2510 ........ 1, 3

Cal. Bus. & Prof. Code § 17200 ........ 2, 3

Cal. Penal Code § 502 ........ 1, 3

Cal. Penal Code § 630 *et seq.* ........ 1, 3, 8

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 7, 2026 at 9:30 am, or as soon thereafter as the matter may be heard, in Courtroom C, 15th Floor, of the U.S. District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Kelley Blue Book Co., Inc. will and hereby does move pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, for an order compelling Plaintiff to submit this case to arbitration on an individual basis and staying this case.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Lacey Murrah, the pleadings and papers on file in this action, any other such matters on which the Court may take judicial notice, and any other matter that the Court may properly consider.

Dated: September 2, 2026 ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Ali Abugheida*
Ali Abugheida (State Bar No. 285284)
aabugheida@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Betty Kim (State Bar No. 341060)
betty.kim@orrick.com
355 South Grand Avenue
Suite 2700
Los Angeles, CA 90071-1596
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

Attorneys for Defendant
Kelley Blue Book Co., Inc.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Kelley Blue Book Co., Inc. ("KBB"), by and through its undersigned counsel and pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, respectfully moves the Court for an order compelling arbitration Plaintiff to arbitration and staying this case. In support thereof, KBB states as follows:

## I. INTRODUCTION

This case belongs in arbitration. When Plaintiff Gayatri De visited www.kbb.com ("the Website"), KBB presented her with a well-established type of internet agreement: A conspicuous banner displayed two buttons and a link related to cookie consent and expressly stated that "[b]y clicking" any of them, "you agree to our **Terms of Service**" ("Terms"). Declaration of Lacey Murrah ("Murrah Decl."), Ex. A. The blue, bolded "Terms of Service" hyperlink led directly to the full contract. Those disclosures made clear that by clicking one of the banner's buttons, Plaintiff would manifest assent to the Terms.

The Complaint's allegations establish that Plaintiff clicked a button on the banner. That means Plaintiff is bound by the Terms' mandatory arbitration provision, which requires her to submit any claim arising from or related to her use of the Website to individual arbitration pursuant to the Federal Arbitration Act ("FAA"). All of Plaintiff's claims here arise from her use of the Website and so fall squarely within the arbitration provision. Accordingly, the Court should compel arbitration and stay this case.

## II. BACKGROUND

KBB operates the Website, a widely used resource for automotive research that provides vehicle pricing data, reviews, and related information. Compl. ¶ 78. Plaintiff alleges she visited the Website "multiple times per week in June 2026" to "research[] and compar[e] models and pricing" "for a new vehicle." *Id.* ¶ 106. She asserts that the Website deployed software that collected certain information about her visits and shared it with third parties. *Id.* ¶¶ 51-75. According to Plaintiff, KBB's use of that software violated (1) the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*; (2) the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*; (3) the California Comprehensive Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502;

(4) the California Constitution's privacy provisions; and (5) the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq. Id.* ¶¶ 89-165.

The Complaint acknowledges that the Website displayed a "pop-up banner which allows website visitors to opt-out" of cookies. *Id.* ¶ 84. That banner looked like this:




Murrah Decl. ¶ 3. The banner contained one paragraph of disclosures related to the visitor's use of the website, including this sign-in wrap statement: "By clicking one of the buttons or the 'Manage Cookies' link below, you agree to our **Terms of Service** (which contains important waivers)." Clicking the blue, bolded "**Terms of Service**" hyperlink led directly to the full contract. The banner then presented two buttons—"Opt Out of Non-Essential Cookies" and "Continue Browsing with All Cookies"—alongside the "Manage Cookies" link. There is no "X" button, no "close" option, and no way to dismiss the banner without selecting one of these three options.

The Terms contain a prominent arbitration clause. The very first page informs readers: "PLEASE READ THIS AGREEMENT CAREFULLY. THIS AGREEMENT HAS AN 'ARBITRATION AGREEMENT,' WHICH INCLUDES WAIVERS OF YOUR RIGHT TO A JURY TRIAL AND YOUR CLASS ACTION RIGHTS." The full arbitration clause then provides:

> YOU AND KELLEY BLUE BOOK AGREE THAT ANY CLAIMS OR DISPUTES ("Claims") THAT ARISE OUT OF OR RELATE IN ANY WAY TO THESE TERMS, KBB.COM, OR THE SERVICES (INCLUDING BUT NOT LIMITED TO BILLING DISPUTES) ("Claim" or "Claims") SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION OR IN SMALL CLAIMS COURT.

Murrah Decl., Ex. A § 15(a). The agreement specifies that the "Federal Arbitration Act applies" and that "[a]ll arbitrations shall be conducted by JAMS [] under its Streamlined Arbitration Rules and Procedures." *Id.* § 15(i). It also contains a class action waiver (§ 15(d)) and a jury trial waiver (§ 15(f)).

Plaintiff alleges that she "visited the Website multiple times per week in June 2026" to "research[] and compar[e] [vehicle] models and pricing." Compl. ¶ 106. She claims that when she "visited the Website, the Website caused [] Trackers to be installed on Plaintiff's ... browsers," *id.* ¶ 79, and that KBB used the "Trackers to collect [] identifying information and user behavior activity," including "keystrokes" she entered and "URLs and pages" she viewed, and "transmit[ted] that data to [] third-parties," *id.* ¶¶ 81, 110-111.

The Complaint further asserts that "even if a user chooses to opt-out of the cookies" the Website "continues to run 447 third party trackers, including 90 cookies, 3 canvas fingerprints, and 2 session recorder." *Id.* ¶ 86. The only way Plaintiff could have opted out of the cookies was to click the "Opt Out of Non-Essential Cookies" button on the cookie banner.

All of Plaintiff's claims relate to her browsing experience on the Website. Plaintiff contends that KBB's sharing of information gleaned from her browsing constitutes "intercept[ion] for the purpose of committing any criminal or tortious act" in violation of the Federal Wiretap Act. *Id.* ¶ 88. She further alleges that KBB's purported failure to obtain consent from Plaintiff prior to installing and using the tracking technologies on the Website violates §§ 631 and 638.51 of CIPA, along with CDAFA, the California Constitution, and the UCL. *Id.* ¶¶ 87-89. Plaintiff also seeks to represent nationwide and California classes of Website visitors. *Id.* ¶¶ 118-126.

## **III. LEGAL STANDARD**

Section 4 of the FAA permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court ... for an order directing that ... arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. "Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 2650689, at *1 (N.D. Cal. Jul. 6, 2011). If a court

compels arbitration in a dispute filed in federal court and a party requests a stay of proceedings, the FAA requires that the litigation be stayed to allow arbitration to take place. 9 U.S.C. § 3.

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That language requires courts to "rigorously enforce arbitration agreements," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotations omitted), and reflects a "general policy favoring arbitration agreements," which creates a "strong presumption in favor of arbitration." *TFT-LCD*, 2011 WL 2650689, at *2. Thus, in deciding a motion to compel arbitration, a court generally must limit its review to two issues: (1) "whether a valid arbitration agreement exists" and (2) "whether the[] agreement covers a particular controversy." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68-69 (2019). But the arbitration agreement may delegate the second issue to the arbitrator. *Id*.

In answering these questions, courts apply state-law principles that govern the formation of contracts. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Additionally, the FAA permits discovery "in connection with a motion to compel arbitration," if "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue." *I.C. by & Through Chaudhri v. Zynga Inc.*, 2021 WL 51718, at *1 (N.D. Cal. Jan. 6, 2021) (quoting 9 U.S.C. § 4).

## IV. ARGUMENT

### A. The FAA Governs KBB's Arbitration Agreement.

As an initial matter, the FAA governs this dispute. The Terms expressly invoke the statute and confirm that the subject of the Terms, including the Website, "affects interstate commerce." Murrah Decl., Ex. A § 15(i); *see Malone v. Super. Ct.*, 226 Cal. App. 4th 1551,1565, n.13 (2014) (arbitration agreement "provided that it was governed by the FAA" where it stated it "involve[d] interstate commerce"); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277-82 (1995) (FAA

governs agreements to arbitrate that involve national companies due to necessary involvement of interstate commerce).

### B. Plaintiff Agreed to KBB's Terms of Service, Including the Arbitration Provision.

This case involves a commonly enforced type of internet contract: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound" by providing a hyperlink, and "(2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (quoting *Berman v. Freedom Fin. Network*, 30 F.4th 849, 856 (9th Cir. 2022)).[1] "A user's click of a button can be construed as an unambiguous manifestation of assent" as long as the user has been "explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (quoting *Berman*, 30 F.4th 849, 857). KBB followed this formula to a tee.

#### ***1. The banner provided reasonably conspicuous notice of the Terms.***

Courts in the Ninth Circuit evaluate the conspicuousness of notice by examining "the design and content of the interface, as well as the context of the transaction, to determine whether a reasonably prudent user would be on notice of the terms at issue." *Oberstein*, 60 F.4th at 515. Relevant factors include visual design elements such as font size, color, and placement. *See Berman*, 30 F.4th at 856; *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025).

KBB's banner used design elements that courts have consistently found sufficient to put users on notice. The banner itself is a large pop-up that covers a significant portion of the screen and "would not disappear without engagement." Murrah Decl. ¶ 3; *Penning v. NVIDIA*, 2026 WL 1433313, at *10 (N.D. Cal. May 21, 2026) (notice was reasonably conspicuous where the pop-up banners were "persistent"). When, as here, a banner is persistent and remains visible on the webpage as a visitor scrolls on a webpage, there is no concern that important disclosures are hidden "at the bottom of the webpage." *See Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *6

[1] California law governs this dispute pursuant to the Terms of Service. *See* Murrah Decl., Ex. A § 22(a).

(N.D. Cal. Oct. 16, 2025) ("hyperlinks at the bottom of the Dollar Tree website are insufficient to provide constructive notice"). Further, the banner's single paragraph of text expressly references and hyperlinks to the "**Terms of Service**," distinguishing the hyperlink from the surrounding text through initial capitalization, blue coloring, and bold font. Murrah Decl. ¶ 3; *see Oberstein*, 60 F.4th at 516 ("'Terms of Use' hyperlink is conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent."); *Penning*, 2026 WL 1433313, at *10 (reasonably conspicuous banner's hyperlinked terms of service has, *inter alia*, "initial capitalization" and is in a contrasting color); *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *10 (N.D. Cal. Oct. 10, 2025) (hyperlinked cookies policy "is underlined and capitalizes the first letter of each word").

### ***2. The banner expressly advised that clicking any button, including "Opt Out of Non-Essential Cookies," would manifest assent to the Terms.***

In keeping with Ninth Circuit precedent, the Website "explicitly advised" Plaintiff "that the act of clicking will constitute assent to the terms and conditions of an agreement." *Patrick*, 93 F.4th at 477. The banner stated: "By clicking one of the buttons or the 'Manage Cookies' link below, you agree to our **Terms of Service** (which contains important waivers)." *Supra* § II. That text matches disclosures that courts have enforced. *See, e.g.*, *Penning*, 2026 WL 1433313 at *9 (banner "stated explicitly that by clicking any of the buttons, or, … by otherwise continuing to use the Website, the visitor 'accept[s] our Terms of Service (which contains important waivers)'"); *LinkedIn Corp.*, 2025 WL 2899514, at *8 (banner states "By continuing to use our site, you are agreeing to our Cookies Policy," and has an "ACCEPT" button directly below). And it was placed ***directly above*** the corresponding buttons, *supra* § II, a design feature that courts have found particularly effective in conveying to users that clicking a button would manifest contractual assent. *See Oberstein*, 60 F.4th at 515-16 (the language "By continuing past this page and clicking [the button], you agree to our Terms of Use" placed "directly above" the button provided a clear denotation that clicking it "will act as a manifestation of the user's intent to be bound"); *Penning*, 2026 WL 1433313 at *10 ("the text above the action buttons states that … clicking any of the buttons" is an acceptance of the terms); *LinkedIn Corp.*, 2025 WL 2899514, at *10 ("users are

notified that they can consent to the policy by clicking a large box with 'ACCEPT' written in all caps" that is placed directly below the notification). Altogether, then, the Website's banner is a textbook example of the sort of disclosure that puts users on notice that clicking will constitute contractual agreement. (internal citation omitted).

#### ***3. Plaintiff accepted the Terms by clicking the "Opt Out of Non-Essential Cookies" button.***

The Complaint shows that Plaintiff performed the specified action—"clicking a button"—that "unambiguously manifests his or her assent." *Berman*, 30 F.4th at 856. As explained, the Complaint describes how the Website operated ***after*** clicking the "Opt Out of Non-Essential Cookies" button. *Supra* § II; *see* Compl. ¶¶ 84-86, 100. Those allegations establish that Plaintiff clicked the button and manifested asset to the Terms, which include the Arbitration Agreement. That is hardly surprising. The persistent cookie banner covered a significant portion of the screen, making navigation difficult until users clicked one of the banner's options. *See supra* §II.B.1. Having clicked the opt out button to remove the banner and observe how the Website operated, Plaintiff cannot now deny accepting the Terms. *Cf. Penning*, 2026 WL 1433313 at *10 ("Plaintiff cannot pick and choose by claiming he saw the representations in the cookie banner regarding cookie use ... but denying that he saw other representations in the cookie banner.").

### **C. The Parties Delegated Arbitrability Issues to the Arbitrator and Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.**

The Court should stop its analysis there and compel arbitration. Any dispute as to the scope of the Terms' arbitration provisions, and whether it applies to Plaintiff's claims, is delegated to the arbitrator. That is because the Terms incorporate the JAMS Streamlined Arbitration Rules, which grant arbitrators authority to determine questions of jurisdiction and arbitrability. *Id.* § 15(i); JAMS Streamlined Arb. R. & P. 8(b) (2021) ("The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."). The incorporation of JAMS rules constitutes "clear and unmistakable" delegation of arbitrability questions to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Caremark, LLC v. Choctaw Nation*, 104 F.4th 81, 86 (9th Cir. 2024) ("'clear and unmistakable' delegation clauses [] required an arbitrator—not the

district court—to 'decide the threshold question of arbitrability'").

Even if the Court were to decide the arbitrability issue, there can be no real dispute that Plaintiff's claims are subject to the arbitration provision. It applies to "ANY CLAIMS OR DISPUTES ... THAT ARISE OUT OF OR RELATE IN ANY WAY TO THESE TERMS, KBB.COM, OR THE SERVICES." Murrah Decl. Ex. A § 15(a) (emphasis in original). When "an arbitration clause applies to matters … 'arising out of or relating to' the agreement, its application should be broadly construed." *Concat LP v. Unilever, PLC,* 350 F. Supp. 2d 796, 807 (N.D. Cal. 2004) (internal citation omitted). Here, all five of Plaintiff's causes of action plainly arise from and relate to her use of the Website, as they take issue with the ways KBB allegedly collected information about her browsing.

**D. If The Court Does Not Grant KBB's Motion, It Should Allow KBB to Take Discovery into Plaintiff's Use of the KBB Website**.

For the reasons stated above, it should be undisputed that Plaintiff visited the Website in June 2026 and interacted with the consent banner. But if the Court believes that there is room for doubt on that question, it should allow KBB to take limited discovery on that issue, which would include discovery on when Plaintiff visited the Website, her interactions with the Website, and Plaintiff's counsel's visits to and interactions with the Website. *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 832-35 (9th Cir. 2022).

**E. The Court Should Stay This Case Pending Arbitration**.

Section 3 of the FAA provides that when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Supreme Court has confirmed that this language is mandatory: "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024). Here, as demonstrated above, all of Plaintiff's claims are subject to arbitration and KBB requests a stay. Accordingly, the Court should stay the proceedings pending completion of arbitration.

## V. CONCLUSION

For the foregoing reasons, KBB respectfully requests that the Court grant this Motion to Compel Arbitration, order Plaintiff to arbitrate her individual claims against KBB in accordance with the Terms, and stay the case pending the completion of arbitration.

Dated: September 2, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Ali Abugheida*

Ali Abugheida (State Bar No. 285284)
aabugheida@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Betty Kim (State Bar No. 341060)
betty.kim@orrick.com
355 South Grand Avenue
Suite 2700
Los Angeles, CA 90071-1596
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

Attorneys for Defendant
Kelley Blue Book Co., Inc.